Angelo Mishriki, Esq. (Bar No. 305069)
    amishriki@nexiolaw.com
**NEXIO, PC**
245 Fischer Avenue
Suite C3
Costa Mesa, CA 92626
Phone:      (949) 478-6830
Facsimile: (949) 478-1275
*Attorneys for Plaintiff, Sream, Inc.*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SREAM, INC., a California corporation,<br><br>    Plaintiff,<br><br>v.<br><br>WAGIH E. ELGAWLY, *et al.*,<br><br>    Defendants. | Case No. 5:16-cv-00840-R-JEM<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT JUDGMENT AGAINST DEFENDANT WAGIH E. ELGAWLY PURSUANT TO F.R.C.P. 55(b)**<br><br>[[Proposed] Order and Declarations of Angelo Mishriki and Michael Mottsheard Jr., filed concurrently herewith]<br><br>Date:        September 19, 2016<br>Time:       10:00 am<br>Court:      312 North Spring Street, Los Angeles, CA 90012, Courtroom 8<br>Judge:      Hon. Manuel L. Real |

i

# **TABLE OF CONTENTS**

**I.**   **PRELIMINARY STATEMENT** ...............................................1

**II.**   **STATEMENT OF FACT** .....................................................2

    a.   The "RooR" Trademarks and Plaintiff's Business.........................2

    **b.**   The RooR Marks are Counterfeiting Target; ...............................3

    **c.**   Defendant's Infringing Conduct and Failure to Litigate.................4

**III.**   **LEGAL STANDARDS** ......................................................5

**IV.**   **ARGUMENT** ................................................................6

    a.   The *Eitel* Factors Support A Default Judgment Against Defendant...............6

        **i.**   **Plaintiff Will Suffer Prejudice Absent A Default Judgment.**...........6

        **ii.**   **Plaintiff's Claims are Meritorious.**.................................6

        **iii.**   **The Sum of Money At Stake Is Not Disproportionately Large.**.....11

        **iv.**   **There is No Possibility of Disputed Material Facts.** .....................11

        **v.**   **The Default Was Not Due to Excusable Neglect.**...........................12

        **vi.**   **The Policy Favoring Decisions On the Merits Is N/A.**..................12

    b.   Plaintiff Is Entitled To A Statutory Damages .............................12

    c.   Plaintiff is Entitled To a Permanent Injunction .........................14

    d.   Plaintiff Is Entitled To Reasonable Attorneys' Fees And Costs..................16

**V.**   **CONCLUSION** ..............................................................16

**MEMORANDUM OF POINTS AND AUTHORITIES**

# TABLE OF AUTHORITIES

**Cases**

*AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979)...........................8, 9

*Amini Innovation Corp. v. KTY Int'l Mktg.*, 768 F. Supp. 2d 1049 (C.D. Cal. 2011)..........11

*Apple Computer, Inc. v. Formula Int'l Inc.*, 725 F.2d 521 (9th Cir. 1984).........................15

*Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240 (3rd Cir. 1983) ...........16

*AT&T Corp. v. Vision One Security Sys.*, 1995 WL 476251 (S.D. Cal. July 27, 1995).......16

*Beachbody, LLC v. Johannes*, No. CV 11–1148 PSG RZX,
2011 WL 3565226 (C.D.Cal. Aug.12, 2011).....................................................................13

*Brookfield Commc'ns, Inc. v. West Coast Enter. Corp.*,
174 F.3d 1036 (9th Cir. 1999)..............................................................................7, 9, 10

*Cadence Design Sys., Inc. v. Avant! Corp.*, 125 F.3d 824 (9th Cir. 1997) .........................15

*Cripps v. Life Ins. Co. of No. Am.*, 980 F.2d 1261 (9th Cir. 1992)......................................5

*CytoSport, Inc. v. Vital Pharma., Inc.*, 617 F. Supp. 2d 1051 (E.D. Cal. 2009) .................15

*Danning v. Lavine*, 572 F.2d 1386 (9th Cir. 1978) ............................................................. 6

*Discovery Commc'ns., Inc. v. Animal Planet, Inc.*, 172 F. Supp. 2d 1282 (C.D. Cal. 2001)
..............................................................................................................................16

*Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.*, 924 F. Supp. 1559 (S.D. Cal. 1996)..10

*E & J Gallo Winery v. Pasatiempos Gallo, S.A.*, 905 F. Supp. 1403 (E.D. Cal. 1994)......... 9

*E.I. Du Pont de Nemours and Co. v. Drabek*, No. CV 12–10574 DDP AJWX,
2013 WL 4033630 (C.D.Cal. May 3, 2013) ...................................................................13

*Earthquake Sound Corp. v. Bumper Indus.*, 352 F.3d 1210 (9th Cir. 2003).......................8

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391-92 (2006) ...................................15

*Eitel v. McCool*, 782 F.2d 1470 (9th Cir. 1986) ..............................................................5, 6

*Elektra Entm't Grp., Inc. v. Crawford*, 226 F.R.D. 388 (C.D. Cal. 2005)............................ 6

*GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199 (9th Cir. 2000) ..................................10

*Innovation Ventures, LLC v. Pittsburg Wholesale Grocers, Inc.*,

iii

2013 WL 1007666 (N.D. Cal., 2013) ................................................................. 7

*KP Permanent Make–Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596 (9th Cir. 2005) . 7

*Lindy Pen Co., Inc. v. Bic Pen Corp.*, 982 F.2d 1400 (9th Cir.1993) .................................13

*Maier Brewing Co. v. Fleischmann Distilling Corp.*, 390 F.2d 117 (9th Cir.1968) ...........13

*Mullane v. Central Hanover Trust Co.*, 339 U.S. 306 (1950) .............................................12

*MySpace, Inc. v. Wallace*, 498 F. Supp. 2d 1293 (C.D. Cal. 2007).....................................15

*OtterBox v. Berrios*, 2013 WL 5575070 (C.D. Cal. 2013)..................................................13

*OtterBox v. Treefrog Developments*, 2014 WL 1512189 (C.D. Cal. 2014).........................13

*PepsiCo Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172 (C.D. Cal. 2002) ........................6, 11

*Philip Morris USA, Inc. v. Castworld Prods., Inc.*,

219 F.R.D. 494 (C.D. Cal. 2003) ............................................................................6, 8, 13

*Phillip Morris U.S.A. Inc. v. Shalabi*, 352 F. Supp. 2d 1067 (C.D. Cal. 2004) ................... 8

*Phillip Morris USA Inc. v. A & V Minimarket, Inc.*, 592 F. Supp. 2d 669 (S.D.N.Y. 2009)11

*Playboy Enters., Inc. v. Baccarat Clothing Co., Inc.*, 692 F.2d 1272 (9th Cir.1982) ..........13

*Quiksilver, Inc. v. Kymsta Corp.*, 466 F.3d 749 (9th Cir. 2006) ........................................ 8

*Spin Master, Ltd v. Zobmondo Entertainment, LLC*, 2011 WL 3714772 (C.D. Cal., 2011) . 7

*Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832 (9th Cir. 2001) ...............15

*Sweet People Apparel, Inc. v. Zipper Clothing*, No. CV 12–02759–ODW (CWx), 2012 WL

1952842 (C.D.Cal. May 31, 2012) ........................................................................13

*Taylor Made Golf Co. v. Carsten Sports Ltd.*, 175 F.R.D. 658 (S.D. Cal. 1997) ................14

*TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915 (9th Cir. 1987) ..................................5, 11

*U.S. v. Rivera*, 2003 WL 22429482 (C.D. Cal. July 18, 2003) .......................................... 5

*Waits v. Frito-Lay, Inc.*, 978 F.2d 1093, 1108-09 (9th Cir. 1992) ...................................... 7

*Warner Bros. Entm't Inc. v. Caridi*, 346 F. Supp. 2d 1068 (C.D. Cal. 2004).....................12

iv

**MEMORANDUM OF POINTS AND AUTHORITIES**

**Statutes**

15 U.S.C. § 1114...................................................................................................1, 6

15 U.S.C. § 1117...................................................................................................1, 6

15 U.S.C. § 1125...................................................................................................1, 7

15 U.S.C. § 1127...................................................................................................... 8

Fed. R. Civ. P 55..................................................................................................1, 5

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    PRELIMINARY STATEMENT

On April 27, 2016, Plaintiff Sream, Inc. ("Plaintiff" or "Sream") filed the operative Complaint in the above-entitled matter against Defendant Wagih E. Elgawly ("Elgawly" or "Defendant") for trademark infringement, and related claims related to Elgawly's sale of counterfeits, copies and/or colorable imitations of one or more of the RooR Marks.  *See* Dkt. 1.  On June 30, 2016 the Clerk of this Court entered default against Elgawly after Elgawly failed to file a responsive pleading to the Complaint.  Plaintiff has satisfied the requirements of FRCP 55.  *See* Dkt. 12.  Consequently, Plaintiff respectfully request that this Court grant Plaintiff's Application for Default Judgment against Elgawly.

As a result of Defendant's failure to appear in this action and the subsequent entry of default against them, the material factual allegations set forth in Plaintiff's Complaint must be accepted as true.  Those allegations establish all of the necessary elements of Plaintiff's claims for (i) willful trademark infringement and counterfeiting of the RooR trademarks in violation of 15 U.S.C. §§ 1114 and 1117; (ii) willful trademark infringement (false designation) of in violation of 15 U.S.C. § 1125; (iii) willful unfair competition in violation of California Bus. & Prof. Code § 17200 *et seq.*; and (iv) common law unfair competition. On the facts presented, it is also appropriate for the Court to grant Plaintiff all relief requested in this motion, namely:

- Statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c) in the amount of $300,000;
- A permanent injunction enjoining Defendant from continuing to infringe the RooR Marks; and
- Costs and attorneys' fees in the amount of $10,200.00.

In sum, Plaintiff seeks a permanent injunction prohibiting Elgawly from continuing to infringe the "RooR" Mark(s); an award of statutory damages for Elgawly's willful conduct; and an award of Plaintiff's costs and attorneys' fees.

///

///

**MEMORANDUM OF POINTS AND AUTHORITIES**

## II.   STATEMENT OF FACT

a.   The "RooR" Trademarks and Plaintiff's Business.

Headquartered in Germany since 1995, Mr. Martin Birzle d/b/a RooR ("Birzle") is an award-winning designer and manufacturer of smoker's products.  Complaint ¶8 [Dkt. 1]. Birzle's RooR products are widely recognized and highly acclaimed for its ornate and innovative products, including its borosilicate jointed-glass water pipes, parts, and accessories related thereto.  *Id.*  Indeed, it is one of the leading companies in the industry and has gained numerous awards and recognition for its innovative products and designs. *Id.*

For nearly two decades, Birzle's RooR products distinguished Birzle as the premiere manufacturer of glass water pipes because of his unwavering use of quality materials and focus on scientific principles to facilitate a superior smoking experience.  Complaint ¶9. Birzle's painstaking attention to detail is evident in many facets of authentic RooR products.  *Id.*  It is precisely because of the unyielding quest for quality and unsurpassed innovation that RooR products have a significant following and appreciation amongst consumers in the United States.  *Id.*

RooR has spent substantial time, money and effort in developing consumer recognition and awareness of the RooR trademarks.  Complaint ¶11.  Through the extensive use of the mark, RooR and its exclusive licensee Sream, have built up and developed significant goodwill in the entire RooR product line.  *Id.*  A wide array of websites, magazines, and specialty shops include advertising of RooR products which are immediately identifiable.  *Id.*

Mr. Birzle is the exclusive owner of federally-registered and common law trademarks, including but not limited to the marks listed below (hereinafter collectively "RooR Marks"):

| MARK | REG. NO. | GOODS AND SERVICES | STATUS |
|------|----------|--------------------|--------|
| ROOR | 3,675,839 | Smoker's Articles, Namely, Glass Pipes… Water Pipes… | Registered on 9/1/2009; Incontestable as of 2/10/2015 |
| ROOR | 2,307,176 | Smoker's Articles, Namely, | Registered & |

2

| | | Cigarettes, Cigars, Tobacco Pouches, Humidors, Tobacco Spittoons, Chewing Tobacco, Smoking Tobacco And Matches | Incontestable as of 11/6/2009 |
|---|---|---|---|
| ROOR | 2,235,638 | glass bowls…enameled, ground plate, opal, opaline, polished plate, pressed, smoothed plate, speckled, spun, stained, stamped, and unwrought glass | Registered & Incontestable as of 3/17/2009 |

(Complaint ¶11a-c)

Since at least 2013, Plaintiff Sream has been the exclusive licensee of the RooR Mark in the United States.  Complaint ¶10.  By the terms of the RooR-Sream agreement, Sream has manufactured water pipes under the RooR mark.  *Id.*  Sream also advertises, markets, and distributes water pipes, water pipe parts, and other smoker's articles in association with the RooR mark.  *Id.*  All of these activities are made with Birzle's consent and approval, and in accordance with Birzle's strict policies.  *Id.*

In order to protect the RooR Marks, Sream has been contractually granted all enforcement rights to sue to obtain injunctive and monetary relief for past and future infringement of the RooR Marks.  Complaint ¶14.

**b.**  The RooR Marks are Counterfeiting Target;

The superiority of the RooR products is not only readily apparent to consumers, who yearn for RooR's higher quality glass in the marketplace, but to industry professionals as well.  Complaint ¶12.  RooR's unique style and functional superiority has earned the brand accolades in leading trade magazines and online publications.  *Id.*  Indeed, it's exactly because consumers recognize the quality and innovation associated with RooR branded products that consumers are willing to pay higher prices for them.  *Id.*  For example, a RooR-branded 45 cm water pipe retails for $300 or more, while a non-RooR product of equivalent size will usually sell for less than $100.  *Id.*  It is exactly because of the higher sale value of RooR branded products that RooR products are targets of counterfeiters.  Complaint ¶13.  These unscrupulous entities tarnish the RooR brand by unlawfully affixing the RooR Marks to substantially inferior products, leading to significant illegitimate profits.  *Id.*  In essence, Elgawly, and each of them, mislead consumers to pay premium prices for

3

**MEMORANDUM OF POINTS AND AUTHORITIES**

low grade products that free rides on the RooR brand, and in turn, Elgawly reap substantial ill-gotten profits.  *Id.*

       **c.**  <u>Defendant's Infringing Conduct and Failure to Litigate</u>.

Beginning on a date that is currently unknown to Plaintiff and continuing to the present, Elgawly has, without the consent of Plaintiff, offered to sell and sold within the United States (including within this judicial district) goods that were neither made by Sream/Birzle nor by a manufacturer authorized by Sream/Birzle using reproductions, counterfeits, copies and/or colorable imitations of one or more of the RooR Marks (hereafter referred to as "Counterfeit Goods").  Complaint ¶15.

In its ongoing investigation of counterfeit sales of the Plaintiff's products, Plaintiff's investigator purchased a "RooR" glass pipe from Defendant Elgawly for a cost of $ $118.80, charged to the account of Plaintiff's investigator.  Complaint ¶17 & Exhibit A; *See also* Declaration of Michael Mottesheard ("Mottesheard Decl.") ¶¶2-4; Ex. C.  Upon receipt, images and physical units of products purchased from Defendant was inspected by Plaintiff to determine authenticity.  Complaint ¶18.  Plaintiff's inspection of the purchased item using security measures confirmed that the item Defendant sold to Plaintiff's investigator was in fact a counterfeit.  *Id.*

Elgawly willfully used images and names confusingly similar and/or identical to the RooR Marks to confuse consumers and aid in the promotion and sales of their unauthorized Counterfeit Goods.  Complaint ¶21.

Elgawly's actions have confused and deceived, or threatened to confuse and deceive, the consuming public concerning the source and sponsorship of the Counterfeit Goods sold and distributed by Elgawly.  By its wrongful conduct, Elgawly has traded upon and diminished Plaintiff's goodwill.  Furthermore, the sale and distribution of the Counterfeit Goods by Elgawly has infringed upon the RooR Marks.  Complaint ¶¶23, 29.

Elgawly's offering to sell, selling, and encouraging others to import Counterfeit Goods in this manner was and is likely to cause confusion or mistake and/or to deceive consumers who purchase the Counterfeit Goods.  Complaint ¶¶24, 30.

**MEMORANDUM OF POINTS AND AUTHORITIES**

Elgawly also offered to sell, sold, and/or encouraged others to import for the purpose of resale within the United States, Counterfeit Goods consisting of reproductions and/or copies of products bearing the RooR Marks.  Elgawly's use of same was done without Sream/Birzle's authorization.  Complaint ¶¶25, 31.

Specifically, on information and belief, Elgawly has sold significant quantities of Counterfeit Goods within California and within this jurisdiction.  Complaint ¶13, 25.

Sream/Birzle never authorized or consented to Elgawly's use of the RooR Marks, or any confusingly similar marks/designs, colorable imitations, or copied or derivative works by Elgawly; nor has Sream/Birzle authorized Elgawly to manufacture, copy, sell, import, market, or distribute any RooR branded products.  Complaint ¶¶15, 21, 24, and 25.  *See also* Complaint ¶¶27-36, 38-47, 49-54.  Elgawly has not responded to the complaint or otherwise appeared.  *See* Declaration of Angelo Mishriki ("Angelo Mishriki Decl.") ¶¶1-17.

## III.   LEGAL STANDARDS

Pursuant to FRCP 55(b), "[w]here a party fails to plead or otherwise defend against a complaint, after entry of default, default judgment may be entered against him."  *U.S. v. Rivera*, 2003 WL 22429482, at \*5 (C.D. Cal. July 18, 2003); FRCP 55(a).  In the Ninth Circuit, a district court considers the following factors in determining whether to enter a default judgment: (1) the possibility of prejudice to the Plaintiff, (2) the merits of Plaintiff's claims; (3) the sufficiency of the complaint; (4) the sum of money at stake; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the policy underlying the Federal Rules favoring a decision on the merits.  *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

"'The general rule of law is that upon default the factual allegations of the[Complaint], except those relating to [] damages, will be taken as true.'"  *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987);  *Kingvision Pay-Per-View, Ltd. v. Rivers*, 2000 WL 356378, \*1 (N.D. Cal. 2000).  The complaint is reviewed to determine whether the alleged facts support the requested relief.  *Cripps v. Life Ins. Co. of*

*No. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992).  "In applying this discretionary standard, default judgments are more often granted than denied."  *Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003).

## IV.  ARGUMENT

### a.  The *Eitel* Factors Support A Default Judgment Against Defendant.

#### i.  Plaintiff Will Suffer Prejudice Absent A Default Judgment.

The first *Eitel* factor considers whether Plaintiff will suffer prejudice if a default judgment is not entered.  *Eitel*, 782 F.2d at 920.  Here, absent a default judgment Plaintiff will be severely prejudiced, as they will be denied a remedy until such time as Elgawly decides to participate in this action, which has not occurred.  Denying Plaintiff a means of recourse represents a sufficient likelihood of prejudice that strongly weighs in favor of granting a default judgment.  *Castworld Prods.*, 219 F.R.D. at 499; *PepsiCo Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002) (if plaintiff's motion for a default judgment is not granted, plaintiff "will likely be without other recourse for recovery").  *See also Elektra Entm't Grp., Inc. v. Crawford*, 226 F.R.D. 388, 392 (C.D. Cal. 2005) (absent entry of a default judgment, plaintiff would lose the right to a judicial resolution of its claims).

Since Elgawly has ignored this lawsuit, it is likely that they have continued and will continue its infringing activities, causing even further injury to Plaintiff.  As such, if default judgment is not granted, Plaintiff will be left with no recourse for their injuries to their reputation and business caused by Elgawly's illegal counterfeiting activities.  Such an outcome is prejudicial to Plaintiff.

#### ii.  Plaintiff's Claims are Meritorious.

The second and third *Eitel* factors, involving the merits of the claims and sufficiency of the [Complaint] require that Plaintiff "state a claim on which [they] may recover."  *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978).  Here, Plaintiff's Complaint pleads facts sufficient, as a matter of law, to establish that Elgawly is liable for (i) willful trademark infringement and counterfeiting of the RooR trademarks in violation of 15

6

U.S.C. §§ 1114 and 1117; (ii) willful trademark infringement (false designation) of in violation of 15 U.S.C. § 1125(iii) willful unfair competition in violation of California Bus. & Prof. Code §§ 17200; and (iv) common law unfair competition.

### Willful Trademark Counterfeiting

Liability is established under 15 U.S.C. § 1114 if Plaintiff can show that: (1) it is the owners[1] of their registered marks; (2) that such marks are valid and legally protectable; and (3) that Elgawly's use of the marks is likely to cause confusion. *Brookfield Commc'ns, Inc. v. West Coast Enter. Corp.*, 174 F.3d 1036, 1053 (9th Cir. 1999). In the Complaint, Plaintiff alleges facts sufficient to establish each of these elements.

First, Plaintiff alleges in the Complaint that it is the exclusive licensee (granted the right to stand in the owner's shoes) of the following trademarks on the Principal Register, each of which is valid and subsisting:

> a.   U.S. Trademark Registration Number 3,675,839 for the word mark "RooR" and its logo in association with goods further identified in registration in international class 034.
>
> b.   U.S. Trademark Registration Number 2,307,176 for the word mark "RooR" and its logo identified below in association with goods further identified in the registration in international classes 025 and 034.
>
> c.   U.S. Trademark and Registration Number 2,235,638 for the word mark "RooR" and its logo in association with goods further identified in the registration in international class 021.

Federal registration provides "prima facie evidence" of a trademark's validity and entitles the plaintiff to a "strong presumption" that the mark is a protectable mark. *KP Permanent Make–Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596, 604 (9th Cir. 2005). Indeed, where the U.S. Trademark Office issues a registration on the Principal Register, the

---

[1] *See also Innovation Ventures, LLC v. Pittsburg Wholesale Grocers, Inc.*, 2013 WL 1007666 (N.D. Cal., 2013)(**Exclusive licensee steps into shoes of owner when licensee has been granted enforcement rights**); *Spin Master, Ltd v. Zobmondo Entertainment, LLC*, 2011 WL 3714772 (C.D. Cal., 2011); and *Waits v. Frito-Lay, Inc.*, 978 F.2d 1093, 1108-09 (9th Cir. 1992).

presumption is that the mark is inherently distinctive or has acquired distinctiveness through secondary meaning.  *Quiksilver, Inc. v. Kymsta Corp.*, 466 F.3d 749, 760 (9th Cir. 2006).  By virtue of their trademark registrations, Plaintiff has standing to bring suit related to the RooR marks.  Therefore, Plaintiff enjoys a presumption of ownership (via exclusive license) and validity in these marks.

Second, Plaintiff alleges that the infringing designs are confusingly similar to the RooR.  *See* Complaint ¶¶21-36.  Under Ninth Circuit law, the likelihood of confusion determination is ordinarily based upon an analysis of the eight non-exclusive *Sleekcraft* factors.  *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979).

However, where the particular goods at issue are counterfeits,[2] courts presume that there is a likelihood of confusion given that the very purpose of a counterfeit is to confuse the public into believing that the goods at issue are associated with the trademark owner.[3]  In the Complaint, Plaintiff not only alleges that Elgawly's knock-offs bear nearly indistinguishable RooR Marks (Complaint at ¶¶21, 41-42), but have also included depictions of Plaintiff's trademarked designs and the infringing products sold by Elgawly.  *Id.* at ¶13, ¶17 Ex. A.

Plaintiff further alleges that Elgawly's acts of trademark counterfeiting were willful.  Willful trademark counterfeiting occurs when a defendant knowingly and intentionally counterfeits a mark.  *Earthquake Sound Corp. v. Bumper Indus.*, 352 F.3d 1210, 1216-17 (9th Cir. 2003).  Willfulness can also be inferred from a defendant's failure to defend.  *Castworld Prods.*, 219 F.R.D. at 500.  Here, Plaintiff alleges that Elgawly's "actions were intentional, willful, and malicious with a deliberate intent to trade on the goodwill associated with the federally registered RooR Marks."  Complaint at ¶32.  And more broadly, Elgawly "acted willfully, maliciously, oppressively and despicably, with full

---

[2] The Lanham Act defines a "counterfeit" as "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127
[3] *See, e.g., Phillip Morris U.S.A. Inc. v. Shalabi*, 352 F. Supp. 2d 1067, 1073 (C.D. Cal. 2004) ("In cases involving counterfeit marks, it is unnecessary to perform the step-by-step examination… because counterfeit marks are inherently confusing").

**MEMORANDUM OF POINTS AND AUTHORITIES**

knowledge of the adverse effect of their actions on RooR / Sream, and with willful and deliberate disregard for the consequences to RooR / Sream."  Complaint at ¶63. Accordingly, Plaintiff has established that Elgawly engaged in willful trademark counterfeiting.

### Willful Trademark Infringement and Unfair Competition

The analysis is identical for both the first cause of action and third cause of action. Sream alleges in the Complaint that Defendant willfully infringed the RooR Marks, which are registered with the U.S. Trademark Office on the Principal Register.  Complaint at ¶11. In order to prevail on these claims, Sream must demonstrate that it is the owner (or exclusive licensee standing in the owner's shoes) of the RooR marks; that such marks are valid and legally protectable; and that Elgawly's use of the marks is likely to cause confusion. *Brookfield Commc'ns*, 174 F.3d at 1053.  In the Complaint, Plaintiff alleges facts sufficient to establish each of these elements.

As explained in the previous section, Sream has alleged facts demonstrating its ownership (via exclusive license) and the validity of the RooR Marks.  Second, Sream alleges that the Elgawly sold and distributed products bearing a mark that is confusingly similar to the RooR Marks.  Courts have identified eight factors that serve as a guide in determining whether confusion is likely: (1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) actual confusion; (5) marketing channels; (6) degree of care likely to be exercised by the purchaser; (7) defendant's intent; and (8) likelihood of expansion. *Sleekcraft*, 599 F.2d 348-49.[4]  "Although some factors — such as the similarity of the marks and whether the two companies are direct competitors — [are] always [] important, it is often possible to reach a conclusion with respect to likelihood of confusion after considering only a subset of the factors." *Brookfield Commc'ns*, 174 F.3d at 1054. In

---

[4] "Likelihood of confusion 'is not limited only to confusion as to the source or origin of goods. Rather, the appropriate inquiry is whether the average purchaser would be likely to believe that the infringer's product has 'some connection' with the trademark owner.'" *E & J Gallo Winery v. Pasatiempos Gallo, S.A.*, 905 F. Supp. 1403, 1412 (E.D. Cal. 1994).

9

**MEMORANDUM OF POINTS AND AUTHORITIES**

this case, all Sleekcraft factors point to a likelihood of confusion:

**Similarity** — "[T]he similarity of the marks . . . has always been considered a critical question in the likelihood-of-confusion analysis." *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1205 (9th Cir. 2000).  In cases where, as here, the infringer's marks are virtually identical in appearance, courts need look no further. Brookfield Commc'ns, 174 F.3d at 1056 (when there is a "virtual identity of marks, if they were used with identical products or services likelihood of confusion would follow as a matter of course").

**Strength** — As a general matter, "[t]he more likely a mark is to be remembered and associated in the public mind with the mark's owner, the greater protection the mark is accorded." *GoTo.com*, 202 F.3d at 1207.  Here, Sream alleges that through exclusive use and substantial sales, advertising and promotion, its marks have become well-known and distinctive.  Complaint at ¶¶8-9, 11-13.

Moreover, Plaintiff's allegation that Elgawly copied the RooR Marks establishes that the marks are strong — otherwise Elgawly would not have copied them.  *Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.*, 924 F. Supp. 1559, 1570 (S.D. Cal. 1996) ("copying . . . is itself evidence" of "strength").

**Intent** — In the Complaint, Sream alleges that Elgawly deliberately, knowingly and willfully used the RooR Marks without authorization.  *Brookfield Commc'ns*, 174 F.3d at 1059 ("The law has long been established that if an infringer adopts his designation with the intent of deriving benefit from the reputation of the trade-mark or trade name, its intent may be sufficient to justify the inference that there are confusing similarities").

**Other Factors** — As is obvious, weighing the remaining *Sleekcraft* factors weight in favor of consumer confusion.  Indeed, Counterfeiters distribute their carbon copy knock-off water pipes through smoke shops, which is exactly what Elgawly acts as (thus, proximity of the goods, marketing channels and likelihood of expansion need no further discussion).  Accordingly, Plaintiff has stated a sufficient cause of action for trademark infringement, and related causes of action for common law trademark infringement and unfair competition (*Id.,* Complaint at ¶¶59-63) and violation of California Bus. & Prof. Code §§

1   17200, et seq. (*Id,*. Complaint at ¶¶56-57).[5]

2   ### iii.   The Sum of Money At Stake Is Not Disproportionately Large.

3   The fourth *Eitel* factor focuses on the amount of money at stake in relation to the

4   seriousness of Elgawly's conduct.  As set out in detail below, Plaintiff seeks statutory

5   damages in the amount of $300,000, for Elgawly's willful trademark counterfeiting (i.e.,

6   $300,000 per trademark counterfeited by Elgawly).  This amount is well below the

7   $2,000,000 maximum *per mark* award permitted under the Lanham Act (15 U.S.C. §

8   1117(c)(2)).  Where, as is the case here, the damages sought are within the allowable

9   statutory range, such an award should not be considered disproportionately large for the

10  purposes of this factor.  *Amini Innovation Corp. v. KTY Int'l Mktg.*, 768 F. Supp. 2d 1049,

11  1056 (C.D. Cal. 2011).

12  With respect to the fourth factor, "the court must consider the amount of money at

13  stake in relation to the seriousness of Defendant's conduct."  *Pepsico, Inc. v. Cal. Sec.*

14  *Cans*, 238 F. Supp. 2d 1172, 1176 (C.D. Cal., 2002).  Defendant has engaged in illegal

15  transactions involving the sale and distribution of counterfeit products.  Defendant's actions

16  have caused damage to Plaintiff's reputation for high quality goods and have diverted

17  profits away from Sream/Birzle, the legitimate owner and licensee of the RooR Marks.

18  Moreover, Defendant has failed to defend themselves in this action.

19  ### iv.   There is No Possibility of Disputed Material Facts.

20  When a defendant defaults, all well-pleaded allegations in the Complaint, except

21  those relating to damages, are accepted as true.  *TeleVideo*, 826 F.2d at 917-18.[6]  Here,

22

23  [5] Plaintiff alleges in the Complaint that Elgawly's acts of trademark infringement and unfair competition were willful.  Willful trademark infringement occurs when the defendant knowingly and intentionally infringes a mark.  *Earthquake Sound Corp.*, 352 at 1216-17. Willfulness can also be inferred from a defendant's failure to defend. Castworld Prods., 219 F.R.D. at 500.  Here, Plaintiff contends that Elgawly was knowingly and deliberately used the RooR Marks.  Accordingly, Plaintiff has established that Elgawly engaged in willful trademark infringement and unfair competition.

26  [6] See also *Phillip Morris USA Inc. v. A & V Minimarket, Inc.*, 592 F. Supp. 2d 669, 674 (S.D.N.Y. 2009) ("Here, the Elgawly's failure to respond either to the complaint or to the papers seeking a default judgment has left the Court with no information as to any of the factors relating to the Elgawly's circumstances.  Thus, the Court draws every reasonable inference on these points against the Elgawly.").

**MEMORANDUM OF POINTS AND AUTHORITIES**

Plaintiff's Complaint alleges facts necessary to supports its claims and no dispute has been raised as to the material allegations of the Complaint.  Accordingly, the fifth *Eitel* factor favors entry of default. *Castworld Prods.*, 219 F.R.D. at 500.

### v.  The Default Was Not Due to Excusable Neglect.

Under the sixth *Eitel* factor, the Court considers whether Elgawly's default resulted from excusable neglect.  Due process requires that interested parties be given notice of an action and be afforded an opportunity to object before a final judgment issues.  *Mullane v. Central Hanover Trust Co.*, 339 U.S. 306, 314 (1950).  Here, Plaintiff served the Summons and Complaint on Elgawly, and the original proofs of service were thereafter filed with the Court.  Angelo Mishriki Decl. ¶ 3. Elgawly failed to respond to the Complaint and Plaintiff's correspondences in a timely manner despite more than adequate opportunity and notice.  Accordingly, Elgawly's default was not due to excusable neglect.

### vi.  The Policy Favoring Decisions On the Merits Is N/A.

The final *Eitel* factor considers the preference for deciding cases on the merits. "However, this factor, standing alone, cannot suffice to prevent entry of default judgment for otherwise default judgment could never be entered." *Warner Bros. Entm't Inc. v. Caridi*, 346 F. Supp. 2d 1068, 1073 (C.D. Cal. 2004). Here, the only reason this lawsuit cannot proceed is because Elgawly, after notice of the Complaint, failed to appear and/or defend. Accordingly, this factor favors Plaintiff.

In sum, the *Eitel* factors weigh heavily in Plaintiff's favor, and the Court should grant this motion and enter a default judgment against Elgawly.

### b.  Plaintiff Is Entitled To A Statutory Damages

The Lanham Act, 15 U.S.C. § 1117(c), provides, in pertinent part:

> "(c) In a case involving the use of a counterfeit mark (as defined in section 34(d) (15 U.S.C. 1116(d)) in connection with the sale, offering for sale, or distribution of goods or services, the Plaintiff may elect, at any time before Final judgment is rendered by the trial court, to recover, instead of actual damages and profits under subsection (a), an award of statutory damages for any such use in connection with the sale, offering for sale, or distribution of goods or services in the amount of -- (1) not less than $1,000 or more than $ 200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just; or (2) <u>if the court finds that the</u>

12

**MEMORANDUM OF POINTS AND AUTHORITIES**

1

<u>use of the counterfeit mark was willful, not more than $2,000,000 per
counterfeit mark per type of goods or services sold, offered for sale, or
distributed, as the court considers just</u>" (emphasis added)

2

While the Lanham Act does not provide bright-line guides for courts to determine an

3

appropriate award of statutory damages, the Ninth Circuit has repeatedly expressed a

4

deterrence policy, that is, the damages award should make "deliberate acts of trade-mark

5

infringement unprofitable." *Maier Brewing Co. v. Fleischmann Distilling Corp.*, 390 F.2d

6

117, 123 (9th Cir.1968); see also *Lindy Pen Co., Inc. v. Bic Pen Corp.*, 982 F.2d 1400,

7

1406 (9th Cir.1993); *Playboy Enters., Inc. v. Baccarat Clothing Co., Inc.*, 692 F.2d 1272,

8

1275 (9th Cir.1982).

9

Statutory damages have been widely construed, usually resulting in awards between

10

$25,000 and $2,000,000 per mark counterfeited.  *See OtterBox v. Treefrog Developments*,

11

2014 WL 1512189 (C.D. Cal. 2014) (Awarding $35,000 for evidence of 11 counterfeit

12

items sold); *E.I. Du Pont de Nemours and Co. v. Drabek*, No. CV 12–10574 DDP AJWX,

13

2013 WL 4033630, at *7 (C.D.Cal. May 3, 2013) (awarding $25,000 per product bearing

14

plaintiff's mark for a total of $525,000 where plaintiff failed to present evidence regarding

15

the extent of sales and evidence that defendant sold infringing products to a wide market);

16

*Sweet People Apparel, Inc. v. Zipper Clothing*, No. CV 12–02759–ODW (CWx), 2012 WL

17

1952842 at *4–5 (C.D.Cal. May 31, 2012) (awarding plaintiff $150,000 in statutory

18

damages per infringed mark where plaintiff(s) alleged that their jeans retailed for about

19

$100 and that sales of the jeans totaled tens of millions of dollars); *Beachbody, LLC v.*

20

*Johannes*, No. CV 11–1148 PSG RZX, 2011 WL 3565226, at *3 (C.D.Cal. Aug.12, 2011)

21

(rejecting plaintiff's request for $2,150,000 in statutory damages and instead awarding

22

$35,000 per mark willfully infringed for a total of $105,000 where plaintiff could only

23

show sales of 132 allegedly infringing DVDs); *Castworld Products*, 219 F.R.D. at 501

24

(awarding $2,000,000 in statutory damages where defendant imported 8,000,000

25

counterfeit cigarettes with a street value of millions of dollars); *See also OtterBox v.*

26

*Berrios*, 2013 WL 5575070 (C.D. Cal. 2013)(awarding $100,000 per willfully infringed

27

mark for a total of $600,000 based on 882 counterfeit products sold); *See also Sream v. T*

28

**MEMORANDUM OF POINTS AND AUTHORITIES**

*and H Investments*, 5:14-cv-00022-JGB-SP at Dkt. 38 (awarding $157, for up to 6 products sold/displayed, Vacated on other grounds); *See also Sream v. T and H Investments*, 5:14-cv-1321-JGB-SP at Dkt. 20 (awarding $54,211 on evidence of 1 counterfeit product sold/displayed);

   Plaintiff made contact with Defendant, and requested an exhaustive search of his records to determine how many counterfeits Elgawly had purchased and sold. Angelo Mishriki Decl. ¶¶ 6-9. Elgawly's Representative provided cursory documents, and later engaged in settlement discussions and reach substantial agreement with Plaintiff as to settlement. *Id.* ¶ 12. However, after reaching agreement, Defendant's representative contacted Plaintiff and stated unequivocally Defendant's desire to not sign the agreement and cease communication with Plaintiff. *Id.* ¶ 13. To date, Plaintiff has not received any further communication from Elgawly. *Id.* ¶ 14. Continued refusals are indicative that Elgawly's sale of counterfeit RooR products has been continuous and more widespread than a sale of one unit to Plaintiff's investigator. Indeed, the investigative report indicates that there were several RooR water pipes that the investigator believed to be counterfeits, which were in the store at the time of the purchase. *See* Mottesheard Decl. Ex. C.

   Because Elgawly has refused to cooperate, it is not possible for Plaintiff to establish damages with certainty. While Elgawly probably hasn't sold millions of counterfeit products, it is clear that it has engaged in the purchase and sale of counterfeits of more than one unit, as based on the refusal to provide documentation.

   Plaintiff believes the appropriate response by the court here is to award $300,000 in statutory damages per trademark infringed so that it sends a clear message to the industry that counterfeiting will not be tolerated, nor will misrepresentations and otherwise refusing to cooperate with discovery demands (even if informally presented). Here, Elgawly has infringed on Reg. No. 3,675,839 (for water pipes) justifying $300,000 in statutory damages.

   c.   Plaintiff is Entitled To a Permanent Injunction

   A permanent injunction is an appropriate remedy in default judgment cases involving

14

**MEMORANDUM OF POINTS AND AUTHORITIES**

claims of copyright infringement and trademark infringement and counterfeiting.  *Taylor Made Golf Co. v. Carsten Sports Ltd.*, 175 F.R.D. 658 (S.D. Cal. 1997).  A permanent injunction is appropriate where a plaintiff shows: (1) irreparable harm; (2) that monetary damages are inadequate; (3) that the balance of hardships favors plaintiff; and (4) that an injunction would benefit the public interest.  *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391-92 (2006).  These factors are satisfied here.

### Irreparable Harm and Inadequacy of Monetary Damages

The inability of a trademark owner to control its reputation creates irreparable harm.  *CytoSport, Inc. v. Vital Pharma., Inc.*, 617 F. Supp. 2d 1051, 1066 n 1, 1080 (E.D. Cal. 2009).  Similarly, courts in this Circuit have held that "jeopardy to a company's competitive position" caused by copyright infringement satisfies the irreparable harm requirement.  *Apple Computer, Inc. v. Formula Int'l Inc.*, 725 F.2d 521, 525-26 (9th Cir. 1984).  The threat of the loss of prospective customers, goodwill, or reputation also supports a finding of irreparable harm.  *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 841 (9th Cir. 2001).  These intangible injuries are irreparable because quantifying their harm is impractical, and such injuries cannot be fully remedied with a financial award.  *MySpace, Inc. v. Wallace*, 498 F. Supp. 2d 1293, 1305 (C.D. Cal. 2007).

Here, Plaintiff alleges in the Complaint that, absent injunctive relief, their businesses, goodwill and reputation will be irreparably damaged.  In particular, Plaintiff alleged that "[Elgawly has] caused, and will continue to cause, Plaintiff irreparable harm unless enjoined by this Court."  Complaint at ¶47.  Plaintiff further allege that "[Elgawly] will continue to designate falsely the origin of their goods, causing irreparable damage to Plaintiff and engendering a multiplicity of lawsuits." *Id.* at ¶53.  As a result, an injunction is the only remedy available to Plaintiff to limit the potential of future injury.

### The Balance of Hardships Favors Plaintiff

While Plaintiff will be severely harmed by the continued infringement and counterfeiting of its protected designs, the harm to Elgawly if injunctive relief is granted is remote.  While Elgawly will be able to continue in business, they will simply have to do

15

without selling the counterfeit products. *Cadence Design Sys., Inc. v. Avant! Corp.*, 125 F.3d 824, 830 (9th Cir. 1997). Therefore, any potential harm is slight in comparison to the permanent and incalculable injury Plaintiff will suffer if an injunction does not issue.

### Injunctive Relief Serves the Public Interest

It is "virtually axiomatic that the public interest can only be served by upholding copyright protections, and correspondingly, preventing the misappropriation of the skills, creative energies, and resources which are invested in the protected work." *Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240, 1255 (3rd Cir. 1983). Likewise, "[w]here defendant's concurrent use of plaintiff's trademark without authorization is likely to cause confusion, the public interest is damaged by the defendant's use." *AT&T Corp. v. Vision One Security Sys.*, 1995 WL 476251, at *7 (S.D. Cal. July 27, 1995). Here, an injunction protects consumers from being deceived by Elgawly's conduct.

### d. Plaintiff Is Entitled To Reasonable Attorneys' Fees And Costs

Plaintiff is entitled to recover their reasonable attorneys' fees under the Lanham Acts for Elgawly's infringing conduct. *Taylor Made*, 175 F.R.D. 658. Moreover, "[a]ttorneys' fees are proper when a court grants a default judgment." *Discovery Commc'ns., Inc. v. Animal Planet, Inc.*, 172 F. Supp. 2d 1282, 1291 (C.D. Cal. 2001). Local Rule 55-3 provides a schedule of reasonable attorneys' fees in default actions, pursuant to which Plaintiff are entitled to an award of $9,600 ($5,600 + 2% of the amount over $100,000). In addition, Plaintiff is entitled to recover the costs they incurred in bringing this action, which totals approximately $600.00. Angelo Mishriki Decl. at ¶ 17.

## V.   CONCLUSION

Given the foregoing, this Court should grant Plaintiff's motion in its entirety.

Dated:  August 16, 2016                **NEXIO, PC**


By:  /s/ Angelo Mishriki /
    Angelo Mishriki
    *Attorneys for Plaintiff, Sream, Inc.*

**MEMORANDUM OF POINTS AND AUTHORITIES**